GRILLENBERGER v. SPENCER.

(Supreme Court, Special Term, Onondaga County.    March 12, 1894.)

1. POWER OF ATTORNEY—CONSTRUCTION.
  Defendant gave to B. a power of attorney to execute a contract for the sale to plaintiff of certain lands, "with full power of substitution and revocation." The contract made under the power mentioned no place of performance, but at the time of its execution it was orally agreed that the tenders by plaintiff should be made to a person named as defendant's attorney. *Held*, that the power of substitution contained in the power of attorney authorized B. to name such person to receive plaintiff's tenders, and a waiver of objections to the sufficiency of the tenders by him was binding on defendant.

2. CONTRACTS—CONTEMPORANEOUS ORAL AND WRITTEN AGREEMENTS.
  Where no place of performance is mentioned in a written contract for the sale of land, an oral agreement, made at the same time, that tenders of performance by plaintiff should be made to a person named as defendant's attorney, and that the performance on the part of defendant might be made by him, does not contravene the terms of the written agreement, but is only an incident thereto.

3. SPECIFIC PERFORMANCE—EXTENSION OF TIME.
  Where it was alleged as a defense that the deeds tendered by plaintiff were not sufficient, but it appeared that plaintiff believed them to be sufficient, and made the tender in due time and in good faith, and no objection was raised at the time, the hearing of the cause will be held open to permit plaintiff to perfect his title.

Action by Rose Grillenberger against Ralph N. Spencer for specific performance of a contract to convey land.    Reference ordered.

Geo. H. Sears and T. K. Fuller, for plaintiff.
Robert N. Waite, for defendant.

WRIGHT, J.    The plaintiff, a resident of Syracuse, and the defendant, a resident of the state of Georgia, by contract, executed on the 1st day of March, 1892, agreed to exchange lands; that of the plaintiff being situated in the state of Georgia, and that of the defendant being situated in the city of Syracuse.    The contract on the part of the defendant was executed by his agent, Edwin E. Blake, under a power of attorney, the empowering clause of which reads as follows:

  "I do make Edwin E. Blake my attorney to sign, seal, and deliver and fully execute articles of agreement unto Rose Grillenberger for a sale and conveyance of the following pieces of land, [here follows the description,] giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, with full power of substitution and revocation, hereby ratifying and confirming all that my said attorney or his substitute shall lawfully do, or cause to be done, by virtue hereof."

The agreement above mentioned provides, on the part of the defendant, that he will convey to her or her heirs in fee simple, by a good and sufficient deed or deeds of conveyance, with covenants of warranty, free and clear from all liens, etc., the land in Syracuse referred to; and, on the part of the plaintiff, it is provided that she will pay for the above-mentioned premises the sum of $300, and

convey unto him, the defendant, his heirs and assigns, by a good and sufficient deed or deeds of conveyance, with covenants of warranty, free and clear from all liens or other incumbrances, the land in question situated in the state of Georgia. It is further agreed and covenanted "that if the covenants and agreements hereinbefore contained are not performed by the said party of the second part on or before the 15th day of May, in the year 1892, this agreement shall be null and void." The defendant alleges as a defense that the plaintiff did not perform her part of the agreement within the time specified, in that the deeds tendered by her were not acknowledged in the form required by the statutes of the state of Georgia to authorize them to be recorded in that state; also, that, at the time of the beginning of the action and the date of the trial, she was unable to perform on her part, she having no title to the property according to the laws of the state of Georgia, for the reason that her claim of title, according to the deeds produced in evidence, was derived from her husband by conveyance directly from him to her. No place of performance of the contract was mentioned in the instrument itself, but at the time of the execution it was orally agreed between the plaintiff and the defendant's agent, Blake, that the tenders on the part of the plaintiff should be made to Mr. Buck, an attorney of the defendant, residing in the city of Syracuse, and that the demands of performance on the part of the defendant might be made of him; and the contract thereupon was put into Mr. Buck's possession. This oral agreement does not contravene the terms of the written instrument, and is only an incident to the chief purpose of the contract, and is therefore binding upon the parties. Franchot v. Leach, 5 Cow. 506; Lawrence v. Miller, 86 N. Y. 139.

On the 14th day of May the plaintiff's attorney, Mr. Sears, tendered to Mr. Buck the $300, and two deeds of conveyance, executed under the forms authorized by chapter 475 of the Laws of 1890 of the state of New York, one from John M. Grillenberger to the plaintiff, and the other from the plaintiff to the defendant, each executed May 13, 1892, and purporting to convey the lands in question in the state of Georgia, and acknowledged before a notary public of the county of Onondaga, and stated to Mr. Buck that the plaintiff desired to carry out her contract, and asked him if the defendant was ready to perform. Mr. Buck replied that he was not ready to perform then, but that Mr. Blake would be there in a day or two, and then he would be ready, and that the matter had better be left till Mr. Blake came. Mr. Sears thereupon stated:

"If the two deeds which he delivered were not such as the Georgia laws required, that the plaintiff was willing at any time to give such deeds as would conform to the Georgia statutes."

Mr. Buck replied:

"There won't be any question about it. I only want a day or two, and I think Mr. Blake will be here either to-day or to-morrow, and there won't be any question about this contract being carried out."

Mr. Sears then said:

"I will inclose this money in an envelope, and these two deeds, and will put them in my safe, any time subject to your order, when you can produce your deeds, under this contract of the Syracuse property, which you are to convey to us."

The money and the deeds were produced in court by Mr. Sears. On the next day, May 15th, Mr. Sears had an interview with Mr. Blake, in the presence of Mr. Buck, as to which Mr. Sears testified as follows:

"I told Mr. Blake what I had done with Mr. Buck, and asked him if they were going to fulfill on their part. 'Why,' he said, he supposed so. He said that he had not got their deeds; that he would have to take a little time to get some mortgages released that were on it, which he said he thought he would be able to do in a day or two; and that he would immediately correspond with Mr. Spencer; and he thought the matter could be closed up in a short time. I told him that I had seen Mr. Buck, and had made a tender of some deeds, and that I had had a discussion with Mr. Buck as to whether my deeds were such as the Georgia statutes required. I said I would not want any question to come up with reference to the fact as to whether I had drawn proper deeds; that we were willing to give such deeds as the statutes required, and, if those were not the deeds that the statutes required, we would at any time execute such deeds. He said: 'There won't be any trouble about that, Mr. Sears. You need not have made any tender at all if you did not choose to.'"

Mr. Sears then described how he had made the tender, and said that the money and the deeds would be in his safe, inclosed in an envelope, and that he (Blake) could get them at any time when he called for them. Mr. Blake said that he would correspond with Mr. Spencer, and that there would not be any trouble about the matter. Subsequently Mr. Sears called upon Mr. Blake to perform the contract. Mr. Blake said he had written Mr. Spencer, but had not heard from him. Thereupon this action was brought.

It is claimed by the plaintiff that this conversation constituted a waiver on the part of the defendant of the date of performance by plaintiff, occasioned by any defects in the manner of the execution of the deeds; but on the part of the defendant it is urged that neither Mr. Buck nor Mr. Blake possessed any power to make such waiver, and that, no conveyance executed in conformity with the Georgia statutes being tendered on or before the 15th day of May, 1892, the defendant is, by force of the terms of the agreement, absolutely released from performance on his part. This objection is not well taken, for the power of attorney which Blake possessed conferred upon him, by implication, authority to provide for all incidents necessary, usual, and appropriate for the performance of the contract; and, in view of the great distance separating the contracting parties, one of the most important of these incidents is the receipt of the consideration, and the appointing of a place where the deeds could be exchanged, and the person to whom the plantiff might deliver her deeds and pay the purchase money, and of whom she might demand a delivery of the deed from the defendant. Determining these matters was intrusted by the defendant to the judgment and discretion of his attorney Blake; and the appointment of Buck for those pur-

poses was, under the circumstances, clearly within the power of substitution contained in Blake's power of attorney, and the plaintiff had the right to rely upon his being clothed with authority, not only physically to receive the tenders, but also to decide upon their sufficiency, accept or reject them, extend for a reasonable time the date of performance, or do any other act usually incident to the carrying out of that part of the contract. To hold, in view of the circumstances, that the defendant's attorney Buck was a mere automaton in the matter, or to permit him to deceive the plaintiff by acting upon secret instructions of the defendant, would establish a principle leading to unfortunate results.

It is urged by the defendant that Blake had no authority to make a waiver, it not being expressly contained in his power of attorney, and that his authority was exhausted upon the execution of the writings, and he cites the case of Hermann v. Insurance Co., 100 N. Y. 411, 3 N. E. 341, to sustain that position. It is unnecessary to pass upon this point, for Blake was acting in unison with Buck in making the waiver. In Duffy v. O'Donovan, 46 N. Y. 233, it was held that the attorney of the defendant, who was authorized to receive the purchase money of the premises in question, had implied authority to extend the time of performance for a reasonable time, to enable the party to perform his part of the contract. In that case the vendee, instead of cash, tendered his check to the agent, within the time specified in the contract for his performance. The agent objected to the check, on the ground that it was not certified. The vendee thereupon went and obtained the proper certification of his check, and returned after the hour for the performance had expired. The court held that, if the agent had intended to hold the plaintiff to the performance at the very minute, he should have notified the party of such intention at the time the vendee proposed to go for the certification; and, no objection being made, the vendor was estopped from claiming, upon the return of the vendee within a reasonable time, that the right to perform had been lost by lapse of time. See, also, Van Zandt v. Furlong, (Sup.) 18 N. Y. Supp. 54; Moore v. King, 57 Hun, 224, 10 N. Y. Supp. 651; Ahern v. Goodspeed, 72 N. Y. 108; Mayer v. Dean, 115 N. Y. 560, 22 N. E. 261; and the Indianapolis Rolling Mill v. St. Louis, Ft. S. & W. R. Co., 120 U. S. 256, 7 Sup. Ct. 542. Every delegation of authority, whether it be general or special, expressed or implied, carries with it, as an incident, the power to do all those things which are necessary, usual, reasonable, and proper to be done to effectuate the purpose for which the power was created. Mechem, Ag. p. 200. Further, it was incumbent upon the defendant to be ready to perform his part of the contract on the 15th day of May, for it must be held that it was the intention of the parties that the performance of each should be concurrent with the other. But the defendant was not ready on the 15th, and desired further time to obtain releases of mortgages upon his property. This fact, coupled with the offer to perform on the part of the plaintiff, constituted a waiver by the defendant of the

time clause of the contract, and entitled the plaintiff to a reasonable extension of time, to enable her to correct her imperfect conveyances. Van Campen v. Knight, 63 Barb. 205, affirmed in 65 N. Y. 580. The contract, therefore, is still in force.

It is urged by the plaintiff that the defendant waived all objections to the form of the conveyances and the manner of their execution. The statutes of Georgia required, as shown by the evidence, that, "to authorize the recording of the deed to realty or personalty it must be attested if executed out of the state by a commissioner of deeds for the state of Georgia, or by a judge of the court of record in the state where executed, with a certificate of the clerk under the seal of such court of the genuineness of the signature of such judge." The deeds tendered did not conform to this statute, being executed before a notary public; and, further, they were not effectual to pass a title. Therefore, if accepted by mistake, equity would compel the execution and delivery of sufficient deeds for that purpose. It was incumbent upon the plaintiff to prove, as part of her case, that her conveyances were sufficient under the Georgia statutes to pass the title. The presumption is that the common law prevails in that state; for, at the time of the separation of the colonies from the mother country, the common law prevailed through the colonies. It was brought from England precisely as the English language was brought; and, on the principle that a state of facts once shown to exist is presumed to continue, it must be presumed that the common law still prevails in that state on this subject. To presume that the statutes of Georgia are precisely like those of this state would involve the broader presumption that each of the states of the Union enacted statutes precisely alike at the same time, which would be violent indeed. Lawson, Pres. Ev. 372–374; Forbes v. Scannell, 13 Cal. 278. The consideration expressed in the conveyance to the plaintiff from her husband being nominal, it cannot be upheld in equity; and, if it could be sustained in equity, the husband, at common law, would be entitled to a freehold estate in the land, and its possession, and the rents and profits thereof during the coverture. Royston v. Royston, 21 Ga. 161; Nunn v. Givhan, 45 Ala. 370. Therefore the conveyances tendered by the plaintiff were ineffectual to pass the title.

The question now presented is whether a court of equity will hold open the hearing of the case to permit the plaintiff to perfect her title, which, at the time of the tender of the deeds, made in due time and in good faith, she believed to be sufficient, no objection to their sufficiency being raised at the time of the tender. We must decide in the affirmative. In one case, where the plaintiff's title was imperfect at the beginning of the action, and the releases of certain devisees were required to perfect it, and those releases were ready for delivery at the hearing, it was held that specific performance should be decreed. Grady v. Ward, 20 Barb. 543. "An inquiry as to title may be directed by the court of chancery at the hearing, so as to save a multiplication of unnecessary costs." Fry, Spec. Perf. (3d Am. Ed.) pp.

612--624, and cases cited. "The court will grant indulgence in point of time for getting over difficulties in matter of conveyance, as well where the vendor is the plaintiff as where the proceedings are instituted by the purchaser." Duke of Beaufort v. Glynn, 31 Smale & Giff. 213. In Chamberlain v. Lee, 10 Sim. 444, the court, on the hearing, allowed ·the vendor time to procure by purchase a small part of the estate which he had agreed to convey; and in another case (Sidebotham v. Barrington, 4 Beav. 110) the court allowed a limited time to the plaintiff to procure the concurrence of the assignee in insolvency in making the conveyance. In Dutch Church v. Mott, 7 Paige, 77, (an action for specific performance,) no sufficient conveyance had been tendered up to the time of trial. Chancellor Walworth refused to dismiss the appeal, but held that "a specific performance may be decreed if it appears by the report of a master that a perfect title can be made to the purchaser at the time of making such report." In People v. Open Board of Stockbrokers' Bldg. Co., 28 Hun, 274, the final disposition of the case was held open, for the plaintiff to take legal proceedings for the procuring of his title; and, on appeal, the court of appeals, in 92 N. Y. 98, reversed the decision, not on the ground that the court should not hold the hearing open in a proper case, but on the ground that it was inequitable to compel the purchaser to wait an uncertain and indefinite length of time, making his purchase depend upon the uncertain result of the vendor's action at law to perfect his title.

An order may be entered referring it to a referee to ascertain, determine, and report whether the plaintiff is now able to make a perfect, unincumbered title to the land in question, and upon the coming in of said report, if it appears that such title can be made, and sufficient warranty deeds under the Georgia statutes are produced, a decree will be entered for a specific performance, upon such terms as may be then determined; otherwise, the complaint must be dismissed, with costs.